IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-HC-02187-M-RJ

EL-AMIN BASHIR,

    Petitioner,

v.

WARDEN WILLIAM HOLZAPFEL, et al.,

    Respondents.

ORDER

On August 17, 2023, El-Amin Bashir ("petitioner"), an inmate at F.C.I. Butner, filed *pro se* a petition for a writ of habeas corpus under 28 U.S.C. § 2241. See Pet. [D.E. 1]; see also Pet. Attach. [D.E. 1-1] (alleging due process violations in June 2020 prison disciplinary hearings at F.M.C. Devens, and seeking, for relief, expungement of the disciplinary convictions, restoration of his First Step Act ("FSA") PATTERN score, and reinstatement of lost Good Conduct Time).

On March 27, 2024, respondent moved to dismiss the action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), Mot. [D.E. 9], and filed a memorandum in support, Resp. Mem. [D.E. 11]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified petitioner about the motion to dismiss, the response deadline, and the consequences of failing to respond, [D.E. 11], but petitioner failed to respond.

For the reasons discussed below, the court grants respondent's motion to dismiss.

Statement of Facts:

On January 6, 2016, in the U.S. District Court for the Eastern District of Pennsylvania, petitioner was sentenced to 240 months' imprisonment pursuant to his conviction for conspiracy to possess 5 kilograms or more of cocaine with intent to distribute, in violation of 21 U.S.C. § 846.

See Pet. [D.E. 1] at 1; see also United States v. Bashir, No. 2:14-CR-284-2 (E.D. Pa.), Min. Entry [D.E. 216] (Jan. 6, 2016), J. [D.E. 220] (Jan. 13, 2016), Am. J. [D.E. 224] (Feb. 5, 2016).

F.M.C. Devens Incident Report 3409214 describes the events of June 21, 2020, circa 10:25 a.m., as follows: Officer Silvia was conducting a search of petitioner's cell; petitioner came to the cell and stood outside the doorway; Silvia thrice ordered petitioner to leave the doorway, but he did not comply "and continued debate with [Silvia] until [Silvia] gave him his toiletry items"; a few minutes later, petitioner returned and continued to stand outside the cell; Silvia gave him two additional orders to leave, but petitioner "continued to be insolent with [Silvia] and did not comply with [the] order to leave until the last direct order." Pet. Attach. [D.E. 1-2] at 8. This incident report was delivered to petitioner circa 2:20 p.m. on June 21, 2020, and charged him with committing the following prohibited acts: "Code 307, Refusing to Obey an Order, and Code 398 Interfering with Staff-Moderate." Id. The Unit Discipline Committee ("UDC") conducted an administrative hearing circa 10:15 a.m. on June 24, 2020. Id. Petitioner declined to make a verbal statement but provided a written statement. Id. The UDC found that, on the greater weight of the evidence, petitioner had committed the acts as charged and sanctioned him with one month loss of both telephone and visiting privileges from June 24, 2020, to July 23, 2020. Id.

F.M.C. Devens Incident Report 3409222 describes the events of June 21, 2020, circa 10:35 a.m., as follows: Officer Silvia returned to Silvia's "office with 7 rolls of toilet paper seized as a result of the search of cell 320"; petitioner saw Silvia "walk past him with the toilet paper and loudly proclaimed that [Silvia] had no right to remove his stuff"; Silvia "tried to inform him of why [Silvia] was taking the toilet paper" but petitioner "became verbally aggressive toward" Silvia; Silvia told petitioner to "come over to [Silvia's] office and wait in the hall"; Silvia went to

2

the office, "called an officer in G-A" Unit, and asked Officer Lynch to come upstairs; petitioner "explained to Officer Lynch the situation involving his toilet paper" and stated that Silvia did not remake his bed after searching his cell; Silvia "repeatedly tried to speak [Silvia's] version of the events but [petitioner] repeatedly cut [Silvia] off and would not allow [Silvia] to speak directly to him"; petitioner "would only speak to and look at Officer Lynch"; prior to petitioner leaving, Silvia informed petitioner that the cell search was not complete and Silvia would "look into the policies regarding how much toilet paper was allowed." Id. at 9. This incident report was delivered to petitioner circa 2:20 p.m. on June 21, 2020, and charged him with committing the following prohibited act: "Code 312, Insolence." Id. The UDC conducted an administrative hearing circa 10:36 a.m., on June 24, 2020. Id. Petitioner elected not to make a verbal statement. Id. The UDC found that, on the greater weight of the evidence, petitioner had committed the act as charged and sanctioned him with a one-month loss of MP-3 player privileges from June 24, 2020, to July 23, 2020, and a change of housing unit after his release from the Special Housing Unit ("SHU"). Id.

F.M.C. Devens Incident Report 3409224 describes the events of June 21, 2020, circa 12:45 p.m., as follows: Richard Stacy "reported to the G-B Unit as the Activities [Lieutenant]" to assess an incident between petitioner and Officer Silvia; petitioner "continuously interrupted [Stacy] and would not allow [Stacy] to speak"; petitioner "was repeatedly asked to stop talking so that [Stacy could] explain why [Stacy] was there and to help rectify the situation." Id. at 10. This incident report was delivered to petitioner circa 2:20 p.m. on June 21, 2020, and charged petitioner with committing the following prohibited act: "Code 312, Insolence." Id. The UDC conducted an administrative hearing circa 10:24 a.m. on June 24, 2020. Id. Petitioner elected not to make a verbal statement, but he submitted a written statement. Id. The UDC found that, on the greater

3

weight of the evidence, petitioner had committed the act as charged and sanctioned petitioner with a two-month loss of telephone privileges from July 24, 2020, to September 23, 2020. Id.

F.M.C. Devens Incident Report 3409449 describes the events of June 22, 2020, circa 9:00 a.m., as follows: circa 12:45 p.m. on June 21, 2020, Richard Stacy "went to the G-B Unit as the Activities Lieutenant" to speak with" petitioner; while "trying to discuss the amount of excess property," petitioner "stated to [Stacy] 'he has three boxes ready to go that due to what's going on now they are not sending out excess property and that the Warden and A/W have seen his cell'"; on June 22, 2020, circa 9 a.m., Stacy "verified with Officer Hay in the mailroom that inmates can still send excess property home at their expense" and "also was informed by Counselor Hansen that [petitioner] had just sent a box of property home on or about June 9th, 2020." Id. at 7. The incident report was delivered circa 4:52 p.m. on June 24, 2020, and charged petitioner with committing the following prohibited act: "Code 313, Lying or Providing a False Statement to a Staff member." Id. The UDC conducted an administrative hearing on June 29, 2020. Id. The incident report reflects that petitioner refused to attend this UDC hearing, but he stated that the June 21, 2020, incident report was "bullshit." Id. The UDC found that, on the greater weight of the evidence, petitioner had committed the act as charged and sanctioned petitioner with a one-month loss of commissary from June 29, 2020, through July 28, 2020, and a one-month property restriction upon his release from the SHU, from July 17, 2020, to August 16, 2020. Id.

Legal Standard:

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the petition's legal and factual sufficiency. Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

4

In reviewing a motion under Rule 12(b)(6), the court accepts as true all factual allegations, but need not accept legal conclusions drawn from the facts, Iqbal, 556 U.S. at 678–79, nor "unwarranted inferences, unreasonable conclusions, or arguments," Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quotation omitted). The court liberally construes *pro se* filings, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), but the facts alleged still "must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The court also "may properly take judicial notice of matters of public record," and "may also consider documents attached to the complaint, see Fed. R. Civ. P. 10(c) . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted).

Discussion:

Section 2241 empowers the court to grant habeas relief to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c); see Maleng v. Cook, 490 U.S. 488, 490 (1989); In re Vial, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997).

Petitioner does not contest the authenticity of the above-cited incident reports, cf. Philips, 572 F.3d at 180, and the reports show the UDC proceedings were procedurally adequate under BOP regulations, 28 C.F.R. § 541.7; Pet. Attach. [D.E. 1-2] at 7–10. The petition also indicates he was placed in the SHU for administrative, not punitive purposes. See Pet. Attach. [D.E. 1-2] at 11.

Succinctly stated, petitioner was not entitled to procedural due process protections during these disciplinary proceedings because the sanctions imposed – unit transfer and restrictions on telephone, visitation, commissary, and personal property possession – did not themselves affect

5

the length of his sentence or amount to "atypical and significant" hardships. Sandin v. Conner, 515 U.S. 472, 484, 487 (1995) (finding inmates only entitled to procedural due process protections for disciplinary proceedings that impose a punishment that either alters "the duration of [a] sentence," or causes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); see Lawrence v. Oliver, 602 F. App'x 684, 687 (10th Cir. 2015) (finding unit transfer and loss of phone and email privileges were not due process violations for habeas corpus purposes); Head v. Beard, No. CV DLB-22-189, 2023 WL 2023217, at *3 (D. Md. Feb. 15, 2023) (finding loss of email privileges as a disciplinary sanction not cognizable under § 2241); Wright v. Warden FCI Bennettsville, No. CV 5:23-221-DCC-KDW, 2023 WL 2465787, at *1 (D.S.C. Mar. 10, 2023) (finding 60-day loss of email and commissary privileges do not implicate protected liberty interests); Mentzos v. Bureau of Prisons, 3:19CV450, 2020 WL 5645818, *6 (E.D. Va. Sept. 22, 2020) (finding a federal inmate did not have a protected liberty interests in disciplinary segregation placement or telephone, email, and commissary use restrictions).

The court now turns to petitioner's claim that his disciplinary convictions resulted in a higher PATTERN score, depriving him of FSA "time credits." See Pet. Attach. [D.E. 1-1] at 1.

> The FSA provides eligible inmates the opportunity to earn 10 to 15 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming (EBRR programs) and productive activities (PA). 18 U.S.C. § 3632(d)(4)(A). The earned credits, referred to as FTCs, can be applied toward earlier placement in prerelease custody, such as Residential Reentry Centers and home confinement, or toward a term of supervised release. *Id.* § 3632(d)(4)(C).
>
> Title I of the FSA mandated the development and implementation of a risk and needs assessment system for people in federal custody. The result was the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) — a program designed to assess individuals' risk of engaging in crime once they are released from federal custody. An inmate's ability to benefit from FTCs is dependent on his PATTERN score. Inmates with any PATTERN score may earn FTCs, but only

> those inmates with low and minimum PATTERN scores can have the FTCs applied to their sentences. 28 C.F.R. § 523.42 (explaining how inmates earn FTCs); id. § 523.44 (limiting application of FTCs to eligible inmates who also have "demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment").

Francis v. Warden of USP Lee, No. 7:22CV00307, 2023 WL 3945511, at *1 (W.D. Va. June 12, 2023).

Although petitioner is free to earn time credits regardless of his PATTERN score, "under 18 U.S.C. § 3624(g)(1)(D)(i)-(ii), the BOP cannot apply those time credits to [his] sentence unless and until [he] has a minimum or low risk recidivism level for two consecutive assessments for prerelease custody or a minimum or low risk recidivism level for the last assessment for supervised release." Fleming v. Napier, No. 8:24-CV-3972-SAL-WSB, 2024 WL 4756291, at *3 (D.S.C. Sept. 24, 2024) (citation omitted), report and recommendation adopted, No. 8:24-CV-3972-SAL, 2024 WL 4753627 (D.S.C. Nov. 12, 2024).

As noted above, the sanctions for petitioner's disciplinary convictions at issue did not include the loss of time credits and, although petitioner asserts that these disciplinary convictions affect his PATTERN score, such downstream results are too attenuated to survive respondent's motion to dismiss. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level").

Finally, because reasonable jurists would not find the court's treatment of any of these claims debatable or wrong, and because none of the issues are adequate to deserve encouragement to proceed further, the court also denies a Certificate of Appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

7

Conclusion:

Accordingly, the court: GRANTS the motion to dismiss [D.E. 9]; DENIES a Certificate of Appealability; and DIRECTS the clerk to close the case.

SO ORDERED this 10th day of January, 2025.

*Richard E. Myers II*
RICHARD E. MYERS II
Chief United States District Judge